**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MALCOLM WEEKS, SR.** **PLAINTIFF**

**V.** **CIVIL ACTION NO. 3:15CV249 HTW-LRA**

**RON KING, SUPERINTENDENT** **RESPONDENT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Malcolm Weeks was convicted in the Circuit Court of Rankin County, Mississippi, and seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record, the undersigned recommends that his petition be dismissed with prejudice.

Weeks was convicted of two counts of sexual battery (Counts II and IV) and one count of gratification of lust (Count III). He was sentenced to serve a term of 30 years on each of the sexual battery counts, and 15 years on the gratification-of-lust count, in the custody of the Mississippi Department of Corrections. The sentences on Counts III and IV were ordered to run concurrently with each other but consecutively to the sentence imposed in Count II, with a provision that the last 15 years of Count IV be suspended followed by 5 years of supervised probation. The pertinent facts are accurately described in relevant part in the state court's opinion as follows:[1]

> Malcolm Weeks Sr. and his wife "Sarah" have two children, "Wesley" and "Mary." Prior to September 19, 2010, the family lived together in Rankin County, Mississippi. On the morning of September 19, 2010, Malcolm went into Mary's room to wake her up for church. When Sarah saw Malcolm leaving Mary's room, she sensed something was wrong and asked him what he was doing in there. Unsatisfied with Malcolm's

[1] The state court used fictitious names to protect the identity of the victim and her family members.

response to her question,[3] Sarah called Mary to the front porch and asked her about Malcolm's behavior. Initially, Mary denied that Malcolm had been doing anything wrong but eventually confessed that he had been touching her inappropriately. Sarah immediately left the house with Wesley and Mary, stopped by her parents' house briefly, and then took Mary to the Florence police department.

At the Florence police department, Mary was interviewed by William Nelson, a deputy with the Rankin County Sheriff's Department. Mary told Officer Nelson that Malcolm had touched her vagina and had performed oral sex on her that morning. She said Malcolm had been touching her inappropriately for about three months and described other incidents in which Malcolm had touched her vagina with his penis, hands, and mouth. When asked by Officer Nelson where she was abused, Mary said her bedroom. She did not tell Officer Nelson that any incidents had occurred in the family's living room, her parents' bedroom, or Malcolm's truck. However, at trial, Mary testified that incidents also occurred in those three locations. She estimated that Malcolm had touched her on more than twenty separate occasions. Mary said the incidents typically occurred in the morning and that she would shower afterward. Mary had not showered the morning of September 19, 2010, so Officer Nelson picked up a sexual-assault examination kit and escorted Mary and Sarah to the University of Mississippi Medical Center (UMMC) emergency room.

At UMMC, Mary was seen by a social worker named Jennifer Cook. Cook heard Mary say Malcolm had touched her vagina with his fingers and his mouth that morning. She also heard Mary describe a separate incident in which Malcolm had made her touch his penis until he ejaculated. Mary told Cook these incidents had been occurring for approximately a month and did not mention any incidents happening in Malcolm's truck or involving a vibrator. Based on her experience, Cook testified that Mary's disclosure was age-appropriate and consistent with a child who had been sexually abused.

At UMMC, Mary also was seen by a pediatric nurse named Tierra Brown. Brown took Mary's personal history and collected samples from her for the sexual-assault examination kit. Mary told Brown that Malcolm had touched her vagina that morning with his fingers, penis, and mouth, and that during a prior incident, he had touched her with a vibrator.

Mary was later interviewed on September 23, 2010, by Rachel Daniels, a forensic interviewer with the Mississippi Children's Advocacy Center. Mary told Daniels how Malcolm had sexually abused her. Mary did not tell Daniels that any incidents had occurred outside her bedroom, but

> Daniels testified that it would not surprise her if Mary had disclosed additional incidents and locations of abuse after the interview. Daniels found Mary's disclosure to be consistent with that of a sexually abused child. This interview was observed by the Rankin County investigator assigned to the case, Shelia Tucker. Tucker testified that, during the interview, Mary stated that Malcolm had touched her vagina with his hand, mouth, and penis, and that he had made her touch his penis until he ejaculated. In addition to observing Daniels's interview of Mary, Tucker reviewed Mary's medical reports and confirmed that all of Mary's disclosures to doctors, nurses, and social workers were consistent. Tucker also testified that she had brought the samples from Mary's sexual-assault examination kit and a DNA sample from Malcolm to Scales laboratory for testing.
>
> At Scales laboratory, Kathryn Rodgers, a forensic DNA analyst, performed a Y-chromosome test on the vaginal and vulvar swabs taken from Mary as part of her sexual-assault examination kit. With the Y-chromosome tests, Rodgers obtained a partial profile from both the vaginal and vulvar swabs taken from Mary, confirming to a scientific certainty that there was male DNA inside Mary's vagina. The partial profiles of both swabs were consistent with a male from Malcolm's paternal line. Therefore, neither he nor any of his patrilineal male relatives could be excluded as the contributor of the DNA found inside and outside of Mary's vagina. The testimony of Rodgers concluded the State's case-in-chief.
>
> . . .
>
> The only witness for the defense was Malcolm himself. Malcolm emphasized that he consistently had denied ever touching Mary inappropriately, that he had volunteered to assist the police in their investigation, and that he had refused to plead guilty in exchange for a lesser sentence. This testimony was consistent with that of Tucker, who had acknowledged on cross-examination that Malcolm had called her, that he had volunteered to come to the police department, and that he repeatedly had denied the allegations.

*Weeks v. State*, 123 So.3d 373, 374–76 (Miss. 2013).

Petitioner was convicted of two counts of sexual battery and one count of gratification of lust. Aggrieved, he appealed and raised two issues:

A. The circuit court erred in allowing the State to substantively amend the indictment against the appellant in a manner that materially altered a defense to the indictment as it originally stood, thus, causing substantial prejudice to the Appellant.

B. The lower court erred in denying the Defendant's Motion for JNOV, and in failing to grant a new trial where the jury returned a verdict against the overwhelming weight of the evidence.[2]

The Mississippi Supreme Court affirmed the convictions and sentences on August 22, 2013. *Id.* Weeks subsequently filed a *pro se* application for state habeas relief arguing the following (as stated by Petitioner):

A. . . . [D]efense counsel failed to investigate the case before trial and, because of such failure, failed to object to the state's failure to present adequate proof of the age of the alleged victim or the age of the accused defendant.

B. . . . [N]ew and intervening decision by the United States Supreme Court, which demonstrates grounds for relief from the convictions and sentences where the amendment was unlawful. The Supreme Court have now found that the failure of the state to present proof, by use of a birth certificate, amounts to grounds adequate to file post relief motion. *Lee Nix v. State of Mississippi*, 2010-M-00428. This new finding constitutes the denial of a constitutional and fundamental right to due process of law.[3]

On March 5, 2015, the Mississippi Supreme Court entered an order denying the application for leave to seek post-conviction relief, finding it lacked merit. Weeks now brings the instant petition and raises the same issues presented on direct appeal and post-conviction review:

Ground One: Denial of due process of law in violation of the 5th and 16th Amendments to the United States Constitution.

Ground Two: Ineffective assistance of counsel where counsel failed to adequately challenge the state's evidence and failed to

---

[2] ECF No. 6-6, pp. 12, 18.

[3] ECF No. 6-7, pp. 4-5 (internal citation omitted). The undersigned notes that the "new and intervening" decision, *Nix v. State*, 126 So.3d 40 (Miss. 2013), cited by Weeks was issued in 2013 by the Mississippi Supreme Court and not the United States Supreme Court.

properly investigate the factual events by raising the issues presented in the habeas petition.

Ground Three: Denial of Due Process of Law, in violation of the 5th and 14th Amendments to the United States Constitution.

**STANDARD OF REVIEW**

This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Under the AEDPA, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under 28 U.S.C. § 2254(d)(1), this Court reviews questions of law as well as mixed questions of law and fact, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone,* 535 U.S. 685 694 (2002). The

state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen*, 558 U.S. 290, 301 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

**Discussion**

In grounds one and two of the instant petition, Weeks argues that defense counsel rendered ineffective assistance by failing to investigate the claims prior to trial; failing to call favorable witnesses; and, failing to object to the State's lack of sufficient proof of age. The Mississippi Supreme Court found these claims were without merit on post-conviction review. The Court finds no unreasonable application of *Strickland v. Washington*, 466 U.S. 688 (1984) or its progeny in this determination.

To establish a claim for ineffective assistance of counsel, a petitioner must show (1) "counsel's representation 'fell below an objective standard of reasonableness'" and (2) "but for his counsel's deficient performance, there is a reasonable probability that the

outcome of the proceeding would have been different." *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) (quoting *Strickland*, 466 U.S. at 688, 694). It is not enough to establish a deficiency and resulting prejudice, however. *United States v. Lewis,* 786 F.2d 1278, 1281 (5th Cir. 1986). To warrant federal habeas corpus relief, Weeks must demonstrate that the Mississippi Supreme Court's adjudication of his ineffective assistance of counsel claim was an "unreasonable application" of *Strickland*. Under the limited of scope of AEDPA review, even if this Court found the Mississippi Supreme Court's application of *Strickland* was incorrect, we could not recommend granting habeas relief unless we found that court's application of *Strickland* to be objectively unreasonable or an actual misapplication of the law. "[S]urmounting *Strickland*'s high bar is never an easy task" and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Vasquez v. Thaler*, 505 F. App'x 319, 326 (5th Cir. 2013) (quoting *Premo v. Moore*, 562 U.S. 115, 122 (2011) (internal quotation marks and citations omitted)).

In the present case, Weeks contends that the victim fabricated the abuse allegations, and that counsel erred in failing to call witnesses to testify to this effect. He also asserts that counsel failed to investigate prior to trial, and "never sought to compel the state to prove the [ ] age of the defendant or the alleged victim which was required by law."[4]

[4] ECF No. 1, p. 6.

A petitioner seeking to show ineffective assistance of counsel by failing to investigate a witness must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Here, Weeks presents nothing more than his own bare allegations that witnesses would have presented exonerating evidence; he presents no witness affidavits or any other evidence to support his claims. *See* 28 U.S.C. § (e)(1); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value."). The law in this Circuit is clear: "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day*, 566 F.3d at 538 (citing *Bray v. Quarterman*, 265 F. App'x. 296, 298 (5th Cir. 2008)).

As it relates to his failure-to-investigate claim, Weeks must allege "with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). For "without a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and

nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)) (internal quotation marks omitted). Again, Weeks makes no affirmative showing here. Other than his blanket assertion that counsel failed to investigate "the case" or the "factual events,"[5] he fails to identify any defenses or facts that warranted further investigation.

The only allegation that Weeks makes with specificity is his claim that counsel failed to object to the State's failure to prove essential statutory elements for sexual battery and gratification-of-lust. Specifically, Weeks contends that counsel should have challenged the prosecution's failure to prove the ages of both parties. As the state court noted, to convict Weeks of sexual battery in violation of Miss. Code Ann. § 97-3-95 (1)(c), the State was required to prove that Weeks was in a position of trust or authority, and at least thirty-six (36) months older than his daughter, who "was at least fourteen (14) but under sixteen (16) years of age" when the sexual penetration occurred. To establish that he was guilty of gratification-of-lust, the State had to likewise prove that Weeks was more than 18 years old and his daughter was less than 16 years old when he, "for the purpose of gratifying his . . . lust, or indulging his . . . depraved licentious sexual desires, . . . handle[d], touch[ed] or rub[bed] [Mary] with hands or any part of his . . . body or any member thereof." *Weeks*, 123 So.3d at 379 (quoting Miss. Code Ann. § 97-5-23(1) (Rev. 2006)).

---

[5] ECF No. 1.

Weeks asserts that a new and intervening decision by the Mississippi Supreme Court, *Nix v. State*, 126 So.3d 40 (Miss. 2013), requires that a birth certificate be presented to meet the State's burden of proof. However, *Nix* is not a new intervening decision, nor does it stand it for the proposition that Weeks asserts.[6] *Nix* confirms long standing Mississippi law that trial testimony is sufficient evidence to establish a victim's age. *Id.* at 43. *See also Watson v. State,* 100 So.3d 1034, 1038 (Miss. Ct. App. 2012); *Wright v. State,* 856 So.2d 341, 344 (Miss. Ct. App. 2003); *Edmond v. State*, 35 So.3d 536 (Miss. Ct. App. 2001).

Here, Weeks has never disputed that he was 39 years old, or that his daughter was 14 years old when the sexual abuse occurred in 2010. At trial, he testified that he was born on October 18, 1970, and was "at least 36 months older than [the victim] at all times of her life. . . ." His testimony was consistent with the testimonies of both the victim's mother, who testified that their daughter was born on March 25, 1996, and that of the victim, who testified that she turned 16 years old in March 2012. Given the testimonial evidence, Weeks's assertion that counsel was ineffective in failing to dispute their ages is without merit. It is well-settled that counsel's failure to raise a meritless argument or objection cannot form the basis of a successful ineffective assistance of counsel claim.

---

[6] Weeks appears to misconstrue the post-convictions proceedings in *Nix*. The Mississippi Supreme Court granted Nix's request for leave to file a motion for post-conviction collateral relief in the trial court. In doing so, the court did not accept the arguments raised therein that Weeks seeks to advance here. *Nix,* 126 So.3d at 42-43 (explaining that "[o]ut of an abundance of caution and to ensure that Nix's conviction did not result in an unconscionable injustice, a panel of this Court granted Nix a hearing in the trial court to establish that the State had failed to present sufficient evidence at trial that the victim was less than sixteen").

*See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (attorneys are not required to file meritless motions). Absent a showing that counsel was deficient, or that he suffered actual prejudice as a result, Weeks has failed to show that the state court's rejection of his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, *Strickland*.

As his final argument, Weeks asserts in ground three that his due process rights were violated when the trial court permitted the State to amend the indictment to reflect the correct subsection of the sexual battery statute. Under Mississippi law, a person is guilty of sexual battery of a minor if he or she engages in sexual penetration with:

> (c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or
>
> (d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.

Miss. Code Ann. 97-3-95-(1) (Rev. 2006). The indictment in this case initially charged Weeks with two counts of sexual battery against a 14-year-old, while he was more than 24 months older than the victim, in violation of Miss. Code Ann. § 97-3-95(1)(d). The indictment was amended during the State's case-in-chief to charge Weeks with two counts of sexual battery against a 14-year-old, while he was more than 36 months older than the victim, in violation of Miss. Code Ann. § 97-3-95 (1)(c). Although the original

indictment recognized that the victim was 14 years of age, it cited and tracked the language of subsection (d), which required the victim to be under the age of 14. The trial court granted the State's request to amend the indictment to cite subsection (c), which applies to victims between the ages of 14-16. Weeks contends that the amendment was an impermissible amendment to the substance, not form.

The Mississippi Supreme Court rejected this argument on direct appeal, explaining that:

> . . . An indictment is sufficient despite citing the wrong statutory subsection so long as it contains a "clear and concise statement of the elements of the crime charged." It was clear from the face of Malcolm's original indictment that he was charged with sexually battering his fourteen-year-old daughter when he was thirty-nine years old. As such, Malcolm should have anticipated being prosecuted under subsection (c).
> . . .
>
> . . . . Malcolm's indictment was sufficient, even though the sexual-battery counts initially tracked the wrong subsection of the sexual-battery statute. The indictment provided Malcolm with notice of the charges against him, because it specifically alleged that he abused his fourteen-year-old daughter and included his birthday, his daughter's birthday, and the dates of the alleged crimes. The trial court appropriately granted the State's motion to amend the indictment to reflect the appropriate subsection of the sexual-battery statute, as the amendment was one of form.

*Weeks*, 123 So.3d at 378-380. Weeks makes no showing that the indictment was so defective that the state court had no jurisdiction, nor has he shown that the decision to allow an amendment of the indictment was contrary to, or an unreasonable application of, clearly established federal law.

The sufficiency of a state indictment is not a matter of federal habeas relief unless it is demonstrated that the indictment was so defective that the convicting court did not

have jurisdiction. *See Riley v. Cockrell,* 339 F.3d 308, 313–14 (5th Cir. 2003). "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction." *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). As noted *supra*, the Mississippi Supreme Court found the amendments were not impermissibly substantive because, at all times, Weeks was on notice that he was charged with sexually battery of his 14-year-old daughter when he was 39 years old. *Wallace v. Sparkman*, 2013 WL 5423911 (N.D. Miss. Sept. 26, 2013); *Hoskins v. Attorney General of Mississippi*, 2017 WL 2559144 (N.D. Miss. June 13, 2017). "If the question of the sufficiency of the indictment [under state law] is presented to the highest state court of appeals, then consideration of the question is foreclosed in federal habeas corpus proceedings." *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988). The question of the sufficiency of the indictment was considered and rejected by the Mississippi Supreme Court on direct appeal. As such, it is precluded from federal habeas corpus review.[7]

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

[7] Even if the Court were to conduct a due process analysis, Weeks was provided the requisite due process protections. The United States Supreme Court has held that an indictment is constitutionally sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense and affords him protection against double jeopardy. *United States v. Debrow*, 346 U.S. 374 (1953). The Due Process Clause of the Fourteenth Amendment requires that "whatever the charging method the state chooses to employ, it must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Brown v. Cain*, No. CIV. A. 99–2667, 2001 WL 96410 at *2 (E.D. La., Feb. 2, 2001); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) (elementary principles of due process require that accused be informed of specific charge against him). For the reasons stated herein, the indictment in this case provided more than adequate information to apprise Weeks of the charges against him in order to prepare a defense and protection against double jeopardy.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted on November 13, 2017.

s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE